IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DA VANG,

                Plaintiff,

v.

HEIDI MELLENBERGER,

                Defendant.

OPINION and ORDER

23-cv-828-jdp

---

This case raises a close question about an inmate's right to correspond with those outside his prison. Plaintiff Da Vang, proceeding without counsel, wrote to the Wisconsin governor complaining about the racial bias of a prison staff member, in which he alleged that the staffer had a sexual relationship with another inmate of a different race than Vang's. Defendant Heidi Mellenberger, a unit supervisor at Stanley Correctional Institution, issued Vang a conduct report for the message. Vang filed this suit alleging that the conduct report was in retaliation for his exercising a First Amendment right.

Mellenberger moves for summary judgment, contending that Vang was punished not for sending the message but for lies contained in the message. Vang makes a good case that his constitutional rights were violated. But Vang's right to send such a message is not clearly established, so I must grant summary judgment to Mellenberger under the doctrine of qualified immunity.

UNDISPUTED FACTS

Plaintiff Da Vang is a state of Wisconsin inmate; in January 2023, Vang was incarcerated at Stanley Correctional Institution. DOC inmates can submit electronic messages

to the Governor's Office. Vang wrote to Governor Tony Evers complaining about his social worker, Lisa Simon. Vang alleged that Simon was biased and that there were rumors that she had a sexual relationship with another inmate. Dkt. 23–1. The message, in its entirety, stated:

> This is concerning Housing Unit 4 Social Worker Lisa Simon's retaliation against me. In said conduct report, rather than investigating SW Simon for her transgression, I was put in the hole for 15 days for exercising a protected right by exposing SW Simon's bias against me and her inappropriate relationship with inmate Lawrence Davis.
>
> The retaliation derived from my request that Simon recuse herself from my upcoming PRC review on the basis that she cannot be impartial against. This is because years earlier while I was waiting in Unit 4-B dayroom to talk to SW Simon, inmate Lawrence Davis entered her office before me and she immediately closed her office door and put the "CLOSED" sign on the door in my face. SW Simon and inmate Davis were looking at me, laughing and giggling. To me, her office was opened to the black inmates but not to me because I'm Asian. But to other prisoners who witnessed the situation, SW Simon closed her office on me so that she can carry on her sexual relationship with said inmate. Otherwise, why would she closed her office while said inmate was in her office and why was that inmate in her office several times a day when he was here at SCI? I demand that this office take the necessary steps to rectify this wrong without the need for me to seek judicial remedy.

Dkt. 23–1. The message refers to a previous prison information request that Vang wrote accusing Simon of being in a sexual relationship with another inmate. Dkt. 23-2. Vang was punished for that correspondence with 15 days of disciplinary segregation. *Id.* That conduct report is not directly at issue here.

Vang's message to the governor was forwarded to the DOC. The Stanley Correctional Institution deputy warden asked defendant unit supervisor Heidi Mellenberger and another staffer to investigate Vang's allegations as a possible concern under the Prison Rape Elimination Act. Based on her investigation, which showed discrepancies in Vang's version of events,

Mellenberger wrote Vang a conduct report for "Lying" and "Lying about an employee" under Wis. Admin. Code §§ DOC 303.31 and 303.32. Dkt. 23-3. Mellenberger contends that she wrote the conduct report because Vang's allegations affected perceptions of Simon's integrity and increased risks that she might face from other inmates.

Vang was found guilty of lying about an employee and given a disposition of 30 days disciplinary segregation. *Id.* Vang was found not guilty of the separate "lying" charge, because the hearing officer concluded that Vang's message did not meet that infraction's requirement that the inmate's statement "'may affect the orderly operation, safety or security of the institution.'" *Id.* at 6 (quoting § DOC 303.31).

I will discuss additional facts as they are relevant to the analysis.

ANALYSIS

Mellenberger contends that Vang's First Amendment retaliation claim fails as a matter of law and that she is entitled to qualified immunity.[1]

To state a claim for retaliation under the First Amendment, Vang must prove that: (1) he was engaged in a constitutionally protected activity; (2) he suffered a deprivation that would likely deter a person of ordinary firmness from engaging in the protected activity in the future; and (3) the protected activity was a motivating factor in Mellenberger's decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). If Vang makes this

---

[1] Vang moved for an extension of time to file his response to Mellenberger's summary judgment motion. Dkt. 25. Shortly after I granted Vang's motion for an extension, Dkt. 26, Vang submitted his summary judgment response, Dkts. 27–29, and a motion to withdraw his motion for extension of time, Dkt. 30. These documents appear to have crossed in the mail with my order granting him an extension. I will deny Vang's motion to withdraw as moot.

initial showing, the burden shifts to Mellenberger to demonstrate that she would have taken the same actions even in the absence of the protected conduct. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

Mellenberger states that she concedes that Vang's message to the governor was protected conduct and that Vang's segregation sentence would likely deter a person of ordinary firmness from corresponding with the governor in the future. But she contends that she didn't write the conduct report because of the message to the governor: she states that "absent this correspondence with the Governor's Office, Mellenberger would have issued the conduct report to Vang because she determined he made false allegations." Dkt. 21, at 11. And she notes that courts considering a retaliation claim must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (internal quotations and citations omitted).

I'll accept Mellenberger's concessions that writing to the governor is protected conduct and that a person of ordinary firmness could be deterred by a 30-day segregation sentence. Her assertion that she would have punished Vang even absent the correspondence with the Governor's Office is an argument common to retaliation cases. Because those cases usually involve a defendant taking an adverse action against the plaintiff that appears unrelated to the alleged retaliatory reason, a defendant has the opportunity to argue that the punishment had nothing to do with the retaliatory rationale asserted by the plaintiff. But that isn't the case here: the only reason that Mellenberger wrote the conduct report was because of Vang's message to the governor. Not only was the message a motivating factor in Mellenberger's actions, it was a but-for cause of her actions.

I take Mellenberger to argue something slightly different. She states that she "would have written up a conduct report for any inmate, independent of protected conduct, if that inmate made false accusations about staff as egregious as those made by Vang." Dkt. 21, at 2. That is, she didn't write Vang up for corresponding with the governor; she wrote Vang up for the *contents* of her correspondence with the governor. This type of argument has merit in certain cases in which prison staff take an adverse action in response to a prisoner's complaint. *See Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020) ("a transfer initiated to punish a prisoner for engaging in protected activity would satisfy the causation element of retaliation, but a transfer initiated as a rational, justifiable response to the substance of the prisoner's complaint would not."). But in this case, that still leaves the question whether punishing a prisoner for statements made in a message to the governor is a "rational, justifiable response" to that message. *Id.*

Cases about prisoners' outgoing mail suggest that punishment is not a justifiable response. Prisoners retain limited First Amendment rights, including in sending and receiving correspondence. *Felton v. Brown*, 129 F.4th 999, 1011 (7th Cir. 2025). Outgoing messages receive greater constitutional protection than incoming mail and are governed by the test established in *Procunier v. Martinez*, 416 U.S. 396 (1974); *Felton,* 129 F.4th at 1011 (recognizing that although *Martinez* no longer applies to incoming mail, it still applies to outgoing mail). Censorship of an inmate's outgoing mail does not violate the First Amendment if it (1) furthers an "important or substantial governmental interest unrelated to the suppression of expression" and (2) is "'no greater than is necessary or essential to the protection' of that interest." *Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006) (quoting *Martinez*, 416 U.S. at 413). Such interests include "security, order, and rehabilitation." *Martinez*, 416 U.S. at 413. But "[p]rison officials

5

may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Id.* In *Martinez*, the Court struck down a regulation barring letters that "unduly complain," "magnify grievances," or express "inflammatory political, racial, religious or other views" and matter deemed "defamatory" or "otherwise inappropriate," concluding that this censorship was not justified by a legitimate government interest. *Id.* at 413–16. Prison restrictions or punishment regarding incoming mail and internal prison communications are gauged under the more lenient standard set forth in *Turner v. Safely*, 482 U.S. 78 (1987): that First Amendment restrictions on prisoners must be reasonably related to legitimate penological interests. *See Koutnik*, 456 F.3d at 784 & n.4.

In addition to claims involving outright censorship, circuit courts have applied *Martinez's* reasoning to retaliation claims involving prisoners being punished for outgoing messages. *Carroll v. Tucker*, 17 F. App'x 392 (7th Cir. 2001); *see also, e.g.*, *Loggins v. Delo*, 999 F.2d 364 (8th Cir. 1993); *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir. 1987). This court has followed suit. *Carter v. Radtke*, No. 10-cv-510-wmc, 2014 WL 549679 (W.D. Wis. Oct. 30, 2014); *Kalafi v. Brown*, No. 16-cv-847-slc, 2018 WL 1660732 (W.D. Wis. April 5, 2018). I'll discuss those cases in more detail.

In *Carter*, an inmate sent outgoing letters to a legal foundation stating that the prison was run by a "clan of all white 100% openly racist close friends and family members," that he had been kept barefoot for a year, and that his prison doctor had "skeletons in her closet." 2014 WL 5494679 at *2–4. The government argued that the false statements interfered with the integrity of the prison and therefore Carter could be punished. This court concluded that "integrity" was not one of the penological interests listed in *Martinez* and therefore Carter's punishment could support a retaliation claim. *Id.* at *17.

6

In *Kalafi*, an inmate was punished for statements about his prison psychologist included in an article that he sent to an organization that published it on the internet. 2018 WL 1660732 at *1. In the article, Kalafi stated that claimed the psychologist was incompetent to diagnose prisoners because she diagnosed inmates with the same disorders she suffered from, that the psychologist had an interest in keeping mentally ill prisoners in prison and that he hoped God would "damn [her] to hell for all eternity." *Id.* This court concluded that under *Martinez*, "his statements [were] protected even if they were false or defamatory." *Id.* at *8.

Mellenberger contends that there were legitimate penological purposes supporting the conduct report: Simon's integrity, as well as safety concerns if inmates thought that Simon discriminated against Asians. But protecting staff's integrity isn't one of the substantial government interests recognized in *Martinez*. *See also Kalafi*, 2018 WL 1660732, at *9 ("Under *Martinez*, however, protecting staff integrity and morale is not a substantial enough interest to justify censoring (or imposing punishment for) an inmate's outgoing communications."). And it's difficult to understand the safety rationale given that Vang didn't distribute his message among inmates, he sent it out of the prison to the governor. Contrary to Mellenberger's asserted security interest, in dismissing the "lying" charge the hearing examiner explicitly stated that "[t]he [s]ituation did not directly affect the orderly operation or security of the institution." Dkt. 23-3, at 6.

Given the retaliation case law following *Martinez* and this case's similarities to *Carter* and *Kalafi*, I would be inclined to conclude that there wasn't a legitimate penological purpose to punish Vang for his outgoing message to the governor, and to require Mellenberger to show cause under Federal Rule of Civil Procedure 56(f)(1) why I shouldn't enter summary judgment in Vang's favor. But Mellenberger also contends that she is entitled to qualified immunity.

7

Under the doctrine of qualified immunity, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Vang bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). Vang opposes Mellenberger's qualified immunity argument but doesn't cite any binding legal authority supporting that opposition. Other than *Martinez* (which wasn't a retaliation case), the case law I've discussed above is non-binding authority and it isn't enough for me to conclude that there is a consensus of persuasive authority clearly establishing Vang's First Amendment right given the specific facts of this case. In particular, although there are similarities here to cases like *Carter* and *Kalafi*, Vang's communication to the governor wasn't as pure of an "outgoing" communication as the communications in those other cases. Vang asked a state official to "take the necessary steps to rectify this wrong without the need for me to seek judicial remedy," Dkt. 23-1, at 2, the clear implication being that he wanted the governor to conduct an investigation, which was indeed what happened. Mellenberger didn't intercept an outgoing message meant for someone else; she received the message as part of an

8

internal investigation that Vang seemingly courted with his message. Had Vang directly raised his concern though an internal complaint process, his punishment wouldn't have violated the more lenient *Turner* standard. *See, e.g.*, *Hale v. Scott*, 252 F. Supp. 2d 728, 734 (C.D. Ill. 2003) (dismissing retaliation claim concerning a prisoner being punished for including rumor of officer's sexual misconduct in a prison grievance), *aff'd*, 371 F.3d 917 (7th Cir. 2004). Given the undisputed facts, I conclude that an officer in Mellenberger's position wouldn't have clearly understood that punishing Vang for an investigation-seeking complaint to the governor's office violated Vang's First Amendment's rights as articulated in *Martinez*. So I will grant Mellenberger's motion for summary judgment and dismiss the case.

ORDER

IT IS ORDERED that:

1. Plaintiff Da Vang's motion to withdraw his motion for extension of time, Dkt. 30, is DENIED as moot.
2. Defendant Heidi Mellenberger's motion for summary judgment, Dkt. 21, is GRANTED.
3. The clerk of court is directed to enter summary judgment accordingly and close the case.

Entered April 25, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge